UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**BRIAN FREED,**

        **Plaintiff,**

        v.                                                      Case No. 20-CV-1012

**KILOLO KIJAKAZI,**[1]
**Acting Commissioner of the Social Security Administration,**

        **Defendant.**

---

## DECISION AND ORDER

---

**1. Introduction**

Alleging that he has been disabled since March 15, 2017 (Tr. 64, 101), plaintiff Brian Freed seeks disability insurance benefits and supplemental security income. His date last insured is December 31, 2021. (Tr. 35.) After his application was denied initially (Tr. 98-121) and upon reconsideration (Tr. 122-67), a hearing was held before Administrative Law Judge (ALJ) Guila Parker on May 14, 2019 (Tr. 58-97). On June 19, 2019, the ALJ issued a written decision concluding that Freed was not disabled. (Tr. 30-50.) After the

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Appeals Council denied Freed's request for review on May 5, 2020 (Tr. 51-57), he filed this action. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 4, 5), and the matter is ready for resolution.

**2. ALJ's Decision**

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). The ALJ found that Freed "has not engaged in substantial gainful activity since March 15, 2017, the alleged onset date[.]" (Tr. 35.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). The ALJ concluded that Freed has the following severe impairments: "status post two myocardial infarctions with stenting, irritable bowel syndrome, headaches, hiatal hernia, and obesity[.]" (Tr. 35.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925. If the impairment or

impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. §§ 404.1509, 416.909, the claimant is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ found that Freed "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" (Tr. 19.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In making the RFC finding the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Freed has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant is precluded from climbing ladders, ropes, or scaffolds; he should not work at unprotected heights or around dangerous moving machinery; he can occasionally stoop, crouch, or crawl; he must avoid concentrated exposure to extreme heat or cold, to wetness, and to vibration; he can work in a work environment with no more than a moderate noise intensity; he can a [sic] work in an environment with light intensity no greater than what is found in a typical office setting; and he requires a work environment with ready access to a bathroom.

(Tr. 38.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560, 416.920(a)(4)(iv), 416.960. The ALJ concluded that Freed "is unable to perform any past relevant work[.]" (Tr. 43.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c). At this step the ALJ concluded that "there are other jobs that exist in significant numbers in the national economy that the claimant also can perform[.]" (Tr. 43.) Specifically, the ALJ concluded that Freed could work as a mail clerk (DOT No. 209.687-026), office helper (DOT No. 239.567-026) or folder (DOT No. 369.687-018). (Tr. 44.)

### 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve

conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

**4. Analysis**

**4.1. Symptom Severity**

An ALJ must engage in a two-step process to evaluate a claimant's symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work related activities…." SSR 16-3p. "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any

subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p.

The ALJ must also consider, to the extent they are relevant, the following factors:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p.

Two broad categories of symptoms are most relevant to Freed's claim: headaches and gastrointestinal symptoms. He reported severe headaches that he characterized as migraines occurring every week or two. (Tr. 81.) He would also get "sinus migraines" "a couple times a week." (Tr. 81.) A migraine will require him to lie down for an hour or two. (Tr. 81.) He is prescribed Sumatriptan for migraines, but it causes drowsiness that is severe enough he needs to nap when he takes it. (Tr. 81-82.)

Freed's gastrointestinal impairments resulted in pain in his "[l]ower stomach area" and back with the pain increasing with bowel movements. (Tr. 78-79.) He explained that he might go a day without a bowel movement, then the next day he will have two or

three, and on the third day he "could end up in the bathroom the whole day … [j]ust constantly running back and forth." (Tr. 79.)

With respect to Freed's headaches, the ALJ stated:

> The treatment notes indicate that the headaches occur daily but provide little detail about the severity or duration of the headaches or any accompanying symptoms. The headaches are treated with over-the-counter pain relievers and sumatriptan. The records suggest medication is successful in relieving the headaches as the claimant has received only limited treatment for headaches and neither a referral for more specialized care nor more aggressive treatments like Botox injections have been recommended.

(Tr. 40.)

As to his gastrointestinal symptoms, the ALJ acknowledged that Freed "has a longstanding history of abdominal pain and constipation caused by IBS." (Tr. 40.) She continued: "However, a colonoscopy completed in July 2016, found hemorrhoids, diverticulosis, and colon polyps but was otherwise normal (Exhibit 1F/112). The diagnosis was constipation predominant IBS (Exhibit 1F/50)." (Tr. 40.) She noted that certain records indicated that Freed was doing "relatively well" for a time, and a physical exam showed "only mild tenderness with no evidence of rebound or guarding." (Tr. 40.) Moreover, "[t]he records do not contain any evidence of malnutrition or unintended weigh loss." (Tr. 40.)

The ALJ's assessment was superficial, unclear, and incomplete. She seemingly paid scarce attention to the relevant factors under SSR 16-3p. For example, although the ALJ appropriately noted that only conservative measures were used to treat his

headaches, she did not acknowledge that Sumatriptan caused significant drowsiness. Moreover, it is unclear what the ALJ meant when she characterized the treatment for Freed's headaches as "successful." Freed still reported frequent headaches, including weekly headaches that are severe enough to require him to lie down. (Tr. 81.)

It is unclear what significance the ALJ attached to the relatively normal colonoscopy. Insofar as she was suggesting that it indicated that the symptoms of Freed's irritable bowel syndrome were not as severe as alleged, there is no medical evidence to support such an inference. The ALJ did not point to anything in the record that suggested that Freed's gastrointestinal symptoms could be expected to result in an abnormal colonoscopy. Nor did the ALJ explain how the absence of evidence of malnutrition or unintended weight loss was inconsistent with Freed's reported symptoms. While irritable bowel syndrome that predominantly results in diarrhea may be expected to result in unintended weight loss, Freed's irritable bowel syndrome resulted in alternating constipation and diarrhea. Again, there is no medical evidence in the record suggesting that these alleged symptoms are inconsistent with Freed's obesity and unintended weight gain. (*See* Tr. 64-65 (noting weight gain).)

Significantly, the ALJ's assessment of the severity of Freed's symptoms did not include a discussion of Freed's daily activities. For example, while Freed reported that he used to go fishing every Saturday and Sunday, his symptoms and fear that he will need

8
Case 1:20-cv-01012-WED   Filed 09/20/21   Page 8 of 14   Document 23

to constantly run to the bathroom has resulted in him going fishing, at best, only few times a year. (Tr. 69.)

Remand is required for the ALJ to reassess the severity of Freed's symptoms.

**4.2. Medical Evidence**

The ALJ must assess a medical opinion in terms of its persuasiveness, paying particular attention to how well the expert supports his opinion, how consistent the opinion is with the record, the expert's relationship with the claimant, the expert's specialization and expertise, and any other particularly relevant factors. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Although the ALJ must consider all of these factors, she need only explain how she considered supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Dr. Peter Han, Freed's treating gastroenterologist, submitted an impairment questionnaire in which he stated, in relevant part, that Freed would likely require "multiple" unscheduled restroom breaks each day, each without notice and for 20 minutes at a time. (Tr. 698-99.) In evaluating Han's opinion, the ALJ stated:

> The undersigned observes that the opinion concerning the need for ready access to a bathroom and the lifting capacity are reasonably consistent with and supported by evidence showing IBS with bouts of constipation and diarrhea, coronary artery disease, IBS, and hiatal hernia. These limitations are persuasive. However, the remainder of Dr. Han's findings are less persuasive. Dr. Han did not provide a medical rationale for his sit, stand, and walk limitations. His assessment of a need for the ability to walk around for 10 minutes a "couple" of times per day is somewhat vague, and the undersigned notes that this could be accommodated by routine breaks. It is also worth emphasizing that Dr. Han reported that the claimant has

> had normal labs, normal CT, and normal endoscopes. It is unclear, therefore, what basis Dr. Han employed to reach the degree of limitation assessed. As for stress tolerance, it is reasonable to envision stress as a trigger for IBS symptoms; however, the limitations in the residual functional capacity were crafted to limit exposure to stressful demands such as exertional, postural, and environmental demands beyond the claimant's tolerance. Predictions concerning absenteeism appear speculative and no objective rationale is provided.

(Tr. 42.)

Freed argues that the ALJ accepted Han's opinion that he would need ready access to a bathroom but erred because she failed to consider the frequency and length of those unscheduled breaks. (ECF No. 17 at 13.) He notes, "The government's own vocational expert testified that an individual who is off task more than 15 percent of the day cannot work (Tr. 93)." (ECF No. 17 at 13.)

The Commissioner responds that "a common-sense reading of the ALJ's decision makes clear that while she agreed Plaintiff should have ready access to a restroom, she did not accept Dr. Han's opinion that Plaintiff would need bathroom breaks multiple times per day for twenty minutes at a time." (ECF No. 21 at 7.) It was unnecessary for the ALJ to explicitly refer to the frequency and length of Freed's bathroom breaks.

Contrary to the Commissioner's argument, it is far from clear that the ALJ rejected Han's opinion regarding how often and for how long Freed would need to use the bathroom. Rather than simply overlooking this aspect of Han's opinion, a more reasonable reading of the ALJ's decision is that, when she accepted Han's "opinion concerning the need for ready access to a bathroom," she also accepted the frequency and

duration elements of that opinion. However, the ALJ did not account for these limitations in her RFC finding.

To the extent it may have been error for the ALJ to not explicitly account for this limitation in her RFC finding, any error was, by itself, harmless. The vocational expert testified that an employer would tolerate an employee who was off task no more than 15 percent of a workday in addition to regular breaks. (Tr. 92.) Han's inherently vague quantification of "multiple x daily" (Tr. 698) tends to connote, particularly when assessed in light of the whole of the medical evidence, an average of perhaps two or three times per day. Consequently, even accepting Han's opinion that Freed may require two to three additional unscheduled bathroom breaks totaling 40 to 60 minutes per day, Freed would not be off task more than 15 percent of the workday.

Han also opined that Freed frequently experiences pain, fatigue, or other symptoms that were severe enough to interfere with his attention and concentration, and he would be absent more than three times per month. (Tr. 697-98.) The ALJ stated, "Predictions concerning absenteeism appear speculative and no objective rationale is provided." (Tr. 42.) However, she did not mention Han's opinions about how Freed's symptoms would affect his ability to pay attention or concentrate. And the ALJ's RFC finding did not account for these limitations.

The ALJ addressed Freed's concentration in conjunction with her step two discussion where she found that he has a "mild limitation." She noted:

> The claimant reported he has problems with attention and concentration and cannot pay attention for more than 15 minutes at a time. However, the claimant retains the capacity for activities demanding some degree of concentration, persistence, or pace. Such activities include cooking, performing household chores, shopping, driving, reading, and handling money. Further, during his teleclaim conversation with the field office, no problems were noted with talking or answering questions (Exhibits 2E; 4E; 10E).

(Tr. 36.)

In addition to not connecting these statements to her assessment of Han's opinions, this explanation is insufficient to sustain the ALJ's rejection of Han's opinions because the activities identified do not tend to reflect Freed's ability to function on a sustained basis in a competitive work environment. Moreover, even a mild limitation in concentration may be material because, as discussed above, the vocational expert testified that an employer would not accept an employee who was off task more than 15 percent of the workday. Freed's unscheduled bathroom breaks could result in significant time off task. If Freed's mild impairment in concentration, persistence, and pace resulted in any time off task in addition to his time off task for bathroom breaks, this combination of limitations may preclude work. Therefore, remand is required to permit that ALJ to reassess the extent to which Freed may be off task during the workday, whether through the need for unscheduled bathroom breaks or limitations in concentration, persistence, or pace.

Freed also alleges that the ALJ erred in her assessment of the opinions of Dr. Russell Blankenburg and Dr. Lisa Armaganian. (ECF No. 17 at 13-14.) Dr. Blankenburg

offered opinions regarding Freed's headaches. Because the severity of Freed's headaches is intertwined with the ALJ's assessment under SSR 16-3p, reassessment of the severity of Freed's symptoms may require reassessment of Dr. Blankenburg's opinion.

As for the opinion of Dr. Armaganian, a cardiologist, Freed has not demonstrated that the ALJ erred. The limitations Dr. Armaganian identified were related to Freed's gastrointestinal impairments. Having not treated him for those issues, she was in a poor position to offer an opinion as to how they might affect his ability to work. She explicitly acknowledged that the physicians who were treating Freed for those issues may be able to provide more precise information. (Tr. 713.)

**5. Conclusion**

The ALJ on remand must reassess the severity of Freed's symptoms in accordance with SSR 16-3p. This may require the ALJ to reassess Dr. Blankenburg's opinion regarding Freed's headaches. The ALJ must also reassess the evidence suggesting that Freed may be off task for a significant portion of the workday. A direct award of benefits, however, is inappropriate because not all factual issues have been resolved, *see Israel v. Colvin*, 840 F.3d 432, 441-42 (7th Cir. 2016), and the evidence is not such that it "can yield but one supportable conclusion." *Martin v. Saul*, 950 F.3d 369, 376 (7th Cir. 2020) (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **vacated**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 20th day of September, 2021.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge